Good morning, Your Honor. Stephen Rackeson on behalf of Mr. LaRuffa, Mr. Garcia, and the other appellant trusts. This is a case dealing with a deficiency judgment in Arizona. And the issue is whether or not there was sufficient proof of the fair market value of the property. Basically, it seems to me that you're arguing that the district court wasn't entitled to rely on and find facts in accordance with Craig Johnson's appraisal. Is that a fair summary? That would be a very fair summary of it. Isn't that just a factual question that we review for clear error? In other words, the district court found the value was X, and we have to determine whether it was clearly erroneous to find that the value was X. That's only part of the standard review issue. The review issues deal with whether the court made certain evidentiary rulings. Those evidentiary rulings are determined by whether or not de novo, whether or not they were appropriate. The admission of, for example, the expert testimony overall is determined on whether or not it's an abuse of discretion. Here, the issue of what the fair market value would be when you get down to the ultimate issue is, of course, the clearly erroneous test. Here, the problem is, and it was a significant problem, is that there is a critical date by which a deficiency judgment is determined under Arizona law. And under Arizona law, that's determined as of the date of the sale. And I respectfully request that I reserve five minutes for rebuttal. And I would also point out, due to the amount of time, I probably can't make every argument again. No, nothing is waived. We understand that. We'll consider all the arguments that are made. But to cut to the chase, it seems to me that Mr. Johnson's reliance on the physical needs assessment to essentially update his appraisal was permissible in the industry. And the extrapolation, to me, on the value and the condition of the property just seems, in a sense, I wouldn't say routine, but certainly within bounds that would permit the district court to rely on it. What's wrong with that? I'm going to give the court a number of reasons. First, one main reason is that the appraiser was the only witness. There was no testimony at the trial on which the appellees had the burden to show that the conditions that he assumed with extraordinary assumptions were actually in place on the date, the critical date of the sale. Mr. Johnson also testified he personally couldn't testify as those conditions because he hadn't seen the property since March 8, 2011. And then the case law, respectfully, and we've cited it on page 29, recognizes that an expert can't be the conduit for an opinion of another. He relied on a report in which he testified that he did not talk to the people that made it. He didn't know who even made it. He didn't know the qualifications of the people that made it. He didn't know when it was made. But experts regularly rely on documentation that they didn't prepare and where they don't even know the person. Isn't that sort of part of what experts do? Yes, but the expert can rely on it, but that is, the court says, and even the Ninth Circuit takes that view in the Paddock case, which we cited, and in the .59 acres property case, that that doesn't relieve the party that's presenting that expert of the burden of proving those facts when they make their case in chief. And the defect here with the inherent problem in the case is they put on an appraiser who hadn't seen the property in a year, who gave an appraisal under USPAP for a different date, under USPAP an appraisal is a snapshot in time, for a different date, and he wasn't able to testify positively that the conditions that existed on the critical date were the conditions that existed on the day of his report, which he couldn't even do because even that date was a date that he hadn't seen the property. I have one other question that I'd like to ask you before you run out of the time that you want to spend in your main argument, and that has to do with the maintenance amount that the district court doubled, that is on the cross appeal. I see no explanation at all in the district court's decision as to why the court chose to double the amount that was testified to, which was I think $350,000, and the testimony was, well, it was actually more than that, but the testimony didn't say how much more and the court didn't explain why it doubled the amount, so what justifies that? Yeah, well, I'll just explain. The only way I can explain it is this, and I'm just going to explain it without being too legal. This was a situation in which the court was confronted with an appraisal that wasn't for the critical date, so he either had to act as his own appraiser and try to figure out what the value was, or like King Solomon, he tried to figure out how to split the baby, but then I remember the King Solomon story is that's because King Solomon didn't know in the beginning who really was the mother. So all I can tell you is it's within the range of what Mr. LaRuffa testified was the fair market value and the amount that the appraiser claimed, but then the main problem that it came up, it was the court trying to do something because it didn't have sufficient evidence from the appellees in the first place in order to come to and arrive at a correct amount. And I would point out that in the courts, in terms of the case law, and particularly if you look at the James Wilson case, which we cited, the Feldman case from Florida, which we cited, all these cases recognize an appraiser cannot rely on the testimony of someone else for the condition of the property. Let me follow up on what Judge, if I can follow up on what Judge Graber was just asking you. So when Mr. LaRuffa testified that he made way over $350,000 in improvements to the property, I was just trying to figure out what, precisely what improvements was Mr. LaRuffa talking about? There were substantial improvements. For one thing, one of the major improvements was the fence that was put, which cost more than $100,000, which was a security fence that was put around the property, and it had security gates, which vastly improved the rental value. And I just point out that an appraisal, for example, and I think it's common sense to any homeowner, you can go paint your house for $400. If you paint it candy stripes, it's not necessarily going to increase the value of the house. There were substantial improvements. They did work on the paving, they did work on the landscaping, they did work on the lighting. He testified at length about various improvements that he made, but the point is an improvement doesn't necessarily become a dollar-for-dollar deal, where just because you put a dollar into something means you improve it by the value of a dollar. But the court didn't say that. The court made no explanation whatsoever. That's true, the court made, but then again, the court made no explanation as to why it was accepting the testimony of Mr. Johnson, and also trying to justify giving a different number based on Mr. LaRuffa's testimony. If I may reserve... You definitely may do that, sir. Thank you. Good morning. May it please the Court, James Ugaldi on behalf of the FLE and cross-opponent Fannie Mae. Your Honor, I think you correctly pointed out the standard review here, that the determination of the fair market value as of the trustee's sale date is subject to a clearly erroneous standard. And I agree with the comments of the Court that there isn't anything in the Court's record to suggest that the Court did anything wrong with regard to determining that the fair market value in adopting the opinion and report of Mr. Johnson was credible and reliable. And if you look at the under advisement ruling, the Court specifically acknowledges that the report and opinion of Mr. Johnson was 89 days prior to Mr. Johnson's sale date. But nonetheless considers it credible and reliable. And I think that the parties all agree, and I noticed some comments from opposing counsel, that the judge had to become his own appraiser. But I think all the parties agree on the law. The Court must determine the fair market value as of a date certain, in this case March 13, 2012, which is the date of the trustee's sale. And the Court, under the statute, is simply required to take all the evidence presented at court, which was the testimony of Craig Johnson, the report of Craig Johnson, the additional testimony of Mr. LaRuffa, even though I agree with Judge Marghia that I don't think there was credible evidence or I don't think the evidence was supported identifying exactly what those improvements were. But again... The only evidence of that in the record was the testimony of Mr. LaRuffa. I agree with the Court that those statements were made by Mr. LaRuffa under oath, and I would agree that those would be subject to a higher standard review, and that's the reason why... I don't understand. You argue in your brief that that's subject to de novo, and I'm not quite sure I understand why, because those are factual determinations made by the judge. I agree that the testimony of LaRuffa was subject to a... or factual findings. I think our argument in our brief, I thought the de novo review was the doubling of credit. No, because it seems... well, I'm speaking for myself only, but it seems to me that the Court's finding that $700,000 was the amount that LaRuffa spent on the improvements, repairs, and maintenance is just as much a factual finding as the appraised value. I don't see why it's any less factual, which doesn't necessarily mean it's not clearly erroneous, but I don't understand why it isn't a factual finding. Because it's a value found from testimony and so forth. I don't understand how it's different. I agree, but if the way the Court used its methodology to author its under advisement ruling, it said that it found the report and appraisal of Craig Johnson to be credible and valid, and therefore determined that the value was 5.1. And also he goes and talks about how he, based on the testimony of Mr. LaRuffa, found that $350,000 of improvements were made to the property. But I think there's a gap. I mean, there's no evidence in the record to suggest that $1 of improvements improves the value of a piece of property by $2. That wasn't testified to by Mr. LaRuffa? No, I don't think it was testified to by Mr. LaRuffa. I don't think it was testified to by Mr. LaRuffa. I don't think it was testified to by Mr. LaRuffa. But what you're saying is an argument that the finding was clearly erroneous. That's one way to couch it, just as it would be a way to couch it to say there's no reasoning behind it, which, anyway. And just to follow up a little bit on that, because we have to look to Arizona law, is that right? That's correct. I mean, it seems like there's an Arizona Court of Appeals case, it's CSA 13-101 loop, and basically it seems like that stands for the principle that it will sustain a result anywhere between the highest and lowest estimate, which may be arrived at by using the various factors appearing in the testimony. Here, I'm just wondering, I'd like for you to comment on, since the final valuation of $5.8 million was between LaRuffa's estimate of $8.2 million and Mr. Johnson's estimate of $5.1 million, doesn't Arizona case law support that we can affirm the district court here? Your Honor, I briefed and outlined a lot of cases. I don't remember looking at that case before today, but I would say that the judge still has to provide some type of factual basis or legal basis in order to arrive at that value. And when we filed our motion for clarification, because when we looked at the judge's under advisement ruling, we couldn't see any legal or factual basis as to why the judge doubled this $350,000 estimate. Well, he made a reference that Mr. Lewis testified that he made improvements of $350,000. I'm not sure. I can't remember if the court said, you know, over $350,000 and then said, you know, he was going to double that amount. And that's so we have to determine if that, I guess, is efficient or if that's, I mean, clearly erroneous. So is that so illogical and implausible based on what was presented? My, our position would be that it would be illogical and implausible because there's nothing in the court record that gets the court there. I mean, if the court makes the finding that the Craig Johnson's appraisal was $5.1 million and that was credible and reliable and that the testimony of Mr. LaRuffa, that he put $350,000 in repairs into the property, I think that's, that's your evaluation. But if there's all of a sudden a doubling of credit or if, if the court would have said, you know, we're going to double it, we're going to double it. If the court would have multiplied that amount by 10 times or a hundred times. But he didn't. Correct. But, but it's. It's between, it's between those margins of the case that Judge McGee has cited. So isn't that presumptively okay? Isn't that permitted? I, I think it's the, the, because it's arbitrary, it's, it's not okay. I think there still has to be some type of law or factual evidence for the court to make that determination. I know there was some discussion regarding the, Mr. Johnson's reliance on the, the property needs assessment from 2012, which was nine days after the trustee's sale. And I would, you know, I think we've cited this in our case, but it's the city of Schastel versus Eller case. And that talks about how, you know, under Rule 703, courts can rely on expert or specialist reports of other nature in order, in order to come to its opinion. And I think that's binding Arizona case law authority. The, the other case I would talk about on long, on the same lines is the Life Investors Insurance Company cases versus Horizon. In that case, the court allowed the jury to hear evidence that was of items that were done post foreclosure. And it, it gave the jury the ability to enable or, or test the expert's opinion. And, and to determine whether or not the, the value that the expert came to was reasonable and reliable. And that's exactly what we have here. The, the property needs assessment report was done nine days after the trustee's sale, provided Mr. Johnson a, an estimate of what that specialist believed that the property needed in order to become up to market. Just like the appraisal that Mr. Johnson did in 2013, which wasn't done in connection with any litigation. But it just goes to show and provides context that this expert is the most, is the person most knowledgeable about this asset and its valuation. You know, I, I see I'm almost out of time and I don't have anything else unless you have any other questions and I guess I would. Anybody have any other questions? No. Thank you counsel. Thank you. Thank you. I'd like to address first is the issue about the conduit testimony. Again, while Federal Rule 703, which applies, deals with the ability to, for the expert to talk about what he has heard from others or relied on in the opinions from others. It does not make that testimony admissible. It's only allowed, not for the truth of the matter, but for the expert to go ahead and talk about the basis of his opinion. Now, it's clear under both of the evidentiary rules, 702, 703, and of course the hearsay rules, as explained in the James Wilson case, and particularly when it deals with valuation of property, that an expert cannot be the conduit for the opinion testimony of another. And in James Wilson, I'm just going to quote, it said, the architect could use what the engineer told him to offer an opinion within the architect's domain of expertise, but he could not testify for the purpose of vouching for the truth of what the engineer had told him of becoming, in short, the engineer's spokesman. In the briefs, you'll see that it's clear, and in the testimony of Mr. Johnson, he said he relied completely and totally on what he did, and we're using the words, and we're using the ACQUITERRA report, that was improper, we objected to it, and it should have been stricken. The second point we'd like to make is we move for an involuntary judgment or dismissal at the end of the case, because at the end of the day, the appraiser could not testify about the value on March 13th, 2012, the critical date. We asked him questions, and most importantly, he couldn't connect the dots from the date of his appraisal to the date of March 13th, 2012. And that was the burden upon the appellee. The case law is very, very clear when they talk about this conduit. Even in the most gracious of cases, they call the inability to cross-examine the party with that opinion either a handoff or a screen, and the Seventh Circuit even goes so far as to call it the situation of a ventriloquist and a dummy. But the point is, we were deprived at trial to question the truthfulness of a PNA report that the appraiser totally relied on, because they had no witness to testify about the facts of the condition. I just lastly point out to the Court, he did not testify about the condition of the property, either intrinsic conditions, such as rent roll, rent, what was going on physically at the property on March 13th, 2012, nor did he testify about comparable sales, property value. He testified about the sales and market situation. So again, we believe that an involuntary dismissal or judgment should have been entered. Thank you. Thank you, Counsel. The case just argued is submitted, and we appreciate very much the arguments that both counsel have presented.
judges: Graber, Murguia, Davila